WECOLINE PRODUCTS, INC., A BODY CORPORATE, PLAIN-
TIFF-RESPONDENT, v. CARMAN & CO., INC., LIKEWISE
A BODY CORPORATE, DEFENDANT-APPELLANT.

Submitted May 31, 1940—Decided October 10, 1940.

For the appellant, *Pitney, Hardin & Skinner* (*Charles R. Hardin* and *Frederick A. Frost*, of counsel).

For the respondent, *R. E. & A. D. Watson* (*Russell E. Watson*, of counsel).

The opinion of the court was delivered by

HEHER, J. On August 2d, 1932, plaintiff and defendant entered into an agreement, in writing, whereby the former undertook, for a fixed period, to "treat" at its plant in Boonton, "by the Twitchell method, * * * raw materials" of defendant, and also "the glycerine waters resulting therefrom by means of" plaintiff's "glycerine evaporating plant," in consideration of the payment by defendant of "such proportionate part of" plaintiff's "actual cost of operating its Twitchell and glycerine evaporting plants as such operation in" defendant's "behalf bears to the total operation of said

plants, plus ten (10%) per cent. of such proportionate cost;" and plaintiff sued to recover for such services under a determination made by a third party pursuant to a clause of the contract providing for such submission of a controversy between the parties.

Defendant pleaded, among other defenses, that the processing costs assessed by plaintiff were excessive, and that, for various reasons which need not here be set out, the determination of the third party was "void."

Defendant counter-claimed (first count) for alleged overcharges for processing paid by it to plaintiff, and also for the value of crude glycerine recovered by plaintiff under the contract for which full credit had not been given, and (second and third counts) for certain items of indebtedness not here in controversy.

The trial judge directed a verdict in favor of plaintiff for $9,030.08 on the cause of action thus pleaded in the complaint, and for plaintiff on the first count of the counter-claim; and, by consent of the parties, he also directed a verdict in favor of defendant for $4,856.65 on the second and third counts of the counter-claim. Defendant appeals.

The first point made is that, since the "submission was limited to determination of processing costs and percentage of glycerine recovery under the contract," the arbitrator, in resolving the cost of handling and of selling the recovered glycerine, and in striking the balance due, had exceeded its jurisdiction.

There is no occasion to determine the question. Acknowledging that it was not thereby "substantially prejudiced," appellant states in the brief that it "does not urge that the judgment be reversed" on this ground, "unless there is also a reversal on the ground that" the arbitrator, "misconceiving its authority, made a mistake of law in respect to the determination of costs and recoveries, and determined what such costs and recoveries were as a result of" plaintiff's "negligence or inefficiency, instead of what they should have been on the basis of reasonably efficient plant operation."

This is the dispositive inquiry. The particular insistence is that the contract did not oblige defendant "to pay costs

or to accept recoveries resulting from wasteful, inefficient or negligent operation of" plaintiff's plant. It is said that it is implicit in such "cost-plus contracts" that the party "undertaking to perform services and to supply materials" will render performance with "reasonable care and efficiency," and that such party is not at liberty, "by his own negligent and inefficient performance," to "increase the cost of the product to the other party and at the same time thereby increase his own profit." The contract uses the term "actual cost;" and the argument of plaintiff is that this connotes the cost of operating the plant as it was when the contract was made, rather than in accordance with the most efficient plan or method available to the trade.

We deem this to be the contract of the parties as expressed in the writing. It is therein recited that the defendant sought "to avail itself of certain of" plaintiff's "facilities" at its Boonton plant. Plaintiff's undertaking was to process the glycerine waters "by means of" its "glycerine evaporating plant;" and defendant bound itself to pay, for the service thus rendered, a proportionate part of plaintiff's "actual cost" of operation of "its * * * glycerine evaporating plant." Plainly, the thing bargained for was the standard of service obtaining at plaintiff's plant in the transaction of its general business of like character, i. e., the quality afforded by its facilities; and this is what defendant received, or, at all events, it was so determined by the arbitrator—a conclusive adjudication as will presently appear. Plaintiff's contractual obligation was expressly limited to "the excess of" its "capacity at such time over and above its requirements for its own business." There was no covenant or guaranty respecting operating efficiency.

It is urged that the effect of this interpretation "is to indemnify" plaintiff "against, and even to reward" it "for the results of its own negligence." But this is not necessarily so, unless the failure to employ the most efficient facilities and methods is to be deemed negligence. And, as stated, such a rule of conduct was evidently not within the contemplation of the parties. The clearly implied measure of operating efficiency was that governing plaintiff in the management

of its "own business"—not more, not less. This is the sense of the writing to a reasonably intelligent person conversant with the operative usages and the circumstances attending its execution, as revealed by the proofs. *Corn Exchange National Bank and Trust Co. v. Taubel*, 113 *N. J. L.* 605. Apparently, defendant was content with this criterion, for plaintiff would also suffer the like injury from operating insufficiency; and this, presumably, was viewed by defendant as constituting ample restraint. At all events, the language used is not fairly evincive of a purpose to lay down a different standard; and, moreover, the proofs show an acquiescence by defendant in that construction of the contract. There is no suggestion of fraud, bad faith, gross negligence or other misconduct.

The report of the arbitrator certified that the judgment was "confined, in accordance with" its "understanding of the terms of" the parties' "joint agreement, to an investigation and determination of actual glycerine recovery and actual costs of processing Carman lye at" plaintiff's plant, and that, "under these conditions," it did "not deal with the efficiency of operation." And, on the cross-examination of one of the arbitrator's senior engineers, there was educed evidence that the "findings" embodied "what in our opinion was the actual cost and actual recovery without regard to what the cost of recovery should have been under more efficient operation." As to the competency and effect of such evidence, see *Bell* v. *Price*, 22 *N. J. L.* 578; *Leslie* v. *Leslie*, 50 *N. J. Eq.* 103.

Thus it is that mere operating inefficiency was the matter rejected as inconclusive—a determination strictly in consonance with the contract. There was no exclusion of fraud or like departures from the implied obligation of the contract, or even of simple negligence if that can be so categorized, as elements tending unjustifiably to increase the cost of operation.

These considerations are likewise decisive of the further contention that, since the award reveals the arbitrator's "intention * * * to make a determination in accordance with the legal contractual rights of the parties," and thus "to follow the law," and the arbitrator did not take "into consideration the efficiency or inefficiency of" plaintiff's "plant operation," there was a fatal "mistake * * * apparent

on the face of the award," arising from a misconstruction of the contract; and that, inasmuch as the arbitrator was "empowered only to determine cost and percentage of recovery 'under' or 'in accordance with' the contract," there was "a mistake of jurisdiction, fatal to the validity of the award, whether or not there was an intent to follow the law."

The remaining points raised are all subsidiary, and are also ruled by the foregoing considerations.

Judgment affirmed.

*For affirmance*—THE CHANCELLOR, CHIEF JUSTICE, PARKER, CASE, BODINE, DONGES, HEHER, PERSKIE, PORTER, DEAR, WELLS, WOLFSKEIL, RAFFERTY, HAGUE, JJ. 14.

*For reversal*—None.